SOUTH OMAHA NATIONAL BANK v. SAMUEL K. STEWART ET AL.

FILED FEBRUARY 8, 1906. No. 14,128.

1. **Chattel Mortgage: DESCRIPTION.** A defective or incorrect description of property covered by a chattel mortgage is immaterial, so far as the parties to the mortgage are concerned, when it is admitted by the mortgagor that the property claimed by the mort-

gagee as included therein is the identical property intended to be mortgaged.

2. ————: SUBSEQUENT PURCHASER. A chattel mortgage giving a lien on the mortgaged property as against the mortgagor is, notwithstanding an imperfect description of the property covered thereby, good as against a subsequent purchaser or mortgagee who fails to show that he purchased in good faith and without notice of the mortgage.

ERROR to the district court for Cherry county: WILLIAM H. WESTOVER, JUDGE. *Reversed.*

*Wolcott & Morrissey* and *E. M. Morsman, Jr.,* for plaintiff in error.

*A. W. Crites, D. B. Jenckes, W. W. Wood* and *Stewart & Munger,* contra.

DUFFIE, C.

In May, 1903, the defendant Stewart made to the South Omaha National Bank his two promissory notes, aggregating $14,887. To secure the payment of these notes he executed a chattel mortgage covering a large number of cattle, 124 horses two years old and upwards, and 36 yearling colts. The clause in the mortgage describing the horses is in the following language: "All my * * * horses of every age and sex consisting at this time of not less than one hundred and twenty-four (124) horses two years old or older, and thirty-six (36) yearlings. Horses branded "Ψ". Horses divided as to age and classes as follows: 100 head three years or older, 28 head two years old, 32 head of yearlings, 114 head of the horses are located near Bear Creek, three miles north of Merriman in Cherry county, Nebraska." The mortgage contained the following provisions: "Said above enumeration and description being intended to cover and include all of said property and all additions and accretions and increase thereof. * * * It is hereby covenanted and stated as a fact that all of said live stock, cattle and chattels are owned by said party

of the first part and are free and clear of all liens and incumbrances of every kind and character: That said live stock, cattle and chattels are now in perfect health and in the undisputed possession of the party of the first part on the premises of said party as above in the counties of Sheridan and Cherry in the state of Nebraska." While the mortgage makes no mention of the grade or character of the horses, it developed on the trial that all of Stewart's horses were what is known as "Belgian" horses and that no other horses of this breed were owned or kept in Cherry or Sheridan counties. In the fall or early winter of 1903 Wood came into possession, and at the commencement of this action had possession at his ranch in Sheridan county and claimed ownership of 60 head of horses and colts which the plaintiff claims were covered by its mortgage. The petition alleges that the defendants had converted these horses to the plaintiff's damage in the sum of $3,000. It is conceded that a part only of the herd of horses were branded as described. The defendants filed separate answers. These answers admit the making of the notes and chattel mortgage set out in the plaintiff's petition, but deny that the 60 head of horses in Wood's possession were included in said mortgage, or that plaintiff had any lien thereon or interest in the same by virtue of said mortgage. It is further alleged that Wood had no notice, knowledge or information that plaintiff claimed any interest in the 60 head of horses until long after he became the absolute owner of 53 of said horses by purchase, and of 7 head of said horses as security for money loaned. It is alleged that Wood purchased in good faith and paid $800 in cash for 53 head of the horses, and that he advanced to the owner of the other 7 head the sum of $400, and took said 7 horses as security for the money so advanced; that said money is now due and wholly unpaid, and that he has a lien thereon for that amount. Other matters are alleged by way of estoppel which are not material to a determination of the case.

After the plaintiff had introduced its evidence and

rested, the court, on motion of the defendants, gave a peremptory instruction to return a verdict in their favor. The district court was of opinion that the evidence offered by the plaintiff failed to show that it had any title or lien on the horses which it charged the defendants with converting, and this is the principal question argued on the submission of the case. The only question which we are called on to determine is this: Does the chattel mortgage describe the 60 head of horses, or any of them, sufficiently to give to the plaintiff a lien thereon as between the bank and Stewart, the mortgagor? If it does, the court was wrong in directing a verdict for the defendants. It will be remembered that the defendants have offered no evidence. The question of the good faith of Wood in purchasing 53 head of these horses, and taking 7 head as security for money advanced to the owner, was neither tried nor determined by the district court. The case had not advanced to that stage when the jury were instructed to find for the defendants. If, when it rested, the plaintiff had made a *prima facie* case, then the defendants should have been put to their proof, and it was error to instruct for the defendants. If the evidence offered by the plaintiff identified the horses in Wood's possession, or any of them, as those included in the mortgage and intended by the parties to be covered thereby, then, as between the parties to the mortgage, the plaintiff was invested with a lien thereon, and this lien was as effectual as against a stranger or person who had no title to the horses as between the parties themselves. It is only where the rights of innocent third parties have intervened that an incorrect or faulty description in a chattel mortgage can be taken advantage of, and, even as against innocent third parties, a faulty description is sufficient if the mortgage contains such description as would lead to the identification of the chattels intended to be mortgaged on reasonable inquiry. As the defendant Wood has introduced no evidence tending to show his *bona fides* in the purchase of these horses at the time the instruction complained of was given, he stands

in the position of a stranger, and has no reason to complain if the mortgage was good as between the parties to create a lien on the horses held by him. In *Leighton v. Stuart,* 19 Neb. 546, it was held that "a chattel mortgage may be void as against the *bona fide* creditors of or purchasers from the mortgagor for defective description of the property mortgaged and yet good as between the immediate parties to the mortgage, especially where the property included in the mortgage is identified by them." This appears to be the general rule everywhere, and this rule ought to obtain with more force where, as in this state, it is held that a verbal agreement to give and accept security upon personal property is valid between the parties, although of no validity as against creditors and subsequent purchasers in good faith. *Conchman v. Wright,* 8 Neb. 1.

A careful examination of the evidence convinces us that the evidence was sufficient to make a *prima facie* case for the plaintiff. If the evidence showed that Stewart was the owner of these horses at the time the mortgage was executed and intended to include them in the mortgage which, by its terms, covered all his horses, then, as between the parties to that instrument, the mortgage was good, regardless of any insufficiency in the description given. D. B. Ingram, who had charge of the business of the bank leading up to the execution of this mortgage, testified that, in a conversation had with Stewart, he asked him if he had moved these horses from Merriman over to Judge Wood's ranch, and Stewart said he had, that they were the same horses that were at Merriman that he had moved from there. Robert Fields, who had charge of gathering up the horses and cattle included in this mortgage, testified as follows: "Q. Do you know from what place these horses were taken to Judge Wood's ranch? A. Yes, sir. Q. From where? A. From out north of Merriman. Q. Do you remember of having had a conversation with Mr. Stewart at Gordon, Nebraska, at which Mr. Ingram and myself were present? A. Yes, sir. Q. You may state

what he then said in regard to these horses that were then at Judge Wood's place. (Objection being made to this question, the following ruling was made by the court: Sustained as to the defendant Wood, and overruled as to the defendant Stewart.) A. He stated that he had taken the horses from his ranch out north of Gordon to Merri-. man, and he claimed that he had moved somewhere in the neighborhood of 150 or 160 head of horses down there, and he had taken these horses that were then at the ranch from there down to the Wood ranch. Q. Did you have another conversation with Mr. Stewart at the time the sheriff served the summons upon him in this case? A. Yes, sir. Q. What did he say then in regard to these horses? A. Well, he told me that he had bought somewhere in the neighborhood of 150 or 160 head—I think he enumerated it 161—with the last bunch of 7 head he claims he had bought down there, and I asked him if that was all the horses he owned or controlled in that country, and he said it was. I asked him if they were included in the mortgage, and he said they were, and I asked him then if these horses he had taken down to Mr. Wood's ranch were some of the same bunch, and he said they were, and taken from the same place."

Were this an action against Stewart alone, no one would, question the sufficiency of this evidence to make a *prima facie* case in favor of the plaintiff. He admits his ownership of these horses at the time the mortgage was made, and that they were included in the mortgage. As between the parties to the instrument this is sufficient, and the sufficiency or insufficiency of the description of the animals is wholly immaterial in such a case. In the attitude which the case assumed, Wood stands in no better position than does Stewart. He elected not to present any evidence of his good faith in his alleged purchase of these horses, and elected to allow his claim to them to be determined upon the evidence submitted by the plaintiff alone. That evidence, as we have seen, was sufficient, in the absence of any countervailing proof, to entitle the

49

plaintiff to a verdict. If Wood desired to show his purchase of these horses and his good faith in the transaction, the opportunity was offered him, and he might have done so. In the absence of proof, it must be presumed that he took either with knowledge of the plaintiff's lien or that he did not pay value for the property.

The court was clearly wrong in instructing for the defendants, and we recommend a reversal of the judgment.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment is

REVERSED.